# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PROGRESSIVE DIRECT INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LAURA YOUSIF, Special )<br>Administratrix of the Estate of )<br>Malic J. Yousif, Deceased, )<br>)<br>Defendant. ) | Case No. CIV-09-838-D |

## ORDER

Before the Court are the motions for summary judgment filed by Plaintiff [Doc. No. 17] and by Defendant [Doc. No. 21]. The parties timely responded to the respective motions, and reply and surreply briefs have been filed; they also submit an extensive record for the Court's consideration. Because the motions are based on the same factual record and legal issues, both are addressed herein.

I. Background:

Plaintiff, Progressive Direct Insurance Company ("Progressive"), brought this declaratory judgment action asking the Court to determine the respective rights of the parties pursuant to uninsured/underinsured motorist ("UM/UIM") provisions in two Progressive automobile insurance policies. More specifically, Progressive's Complaint asked the Court to determine whether coverage extends to a February 2, 2009 motorcycle accident which resulted in the death of Malec Yousif,[1] the adult son of the insureds.

---

[1]Decedent's name is spelled as "Malec" in some pleadings and documents and as "Malic" in others. The Court refers to decedent as Malec because that is the spelling used in the Complaint and in an affidavit executed by his parents and sister. *See* Progressive Ex. 2.

Defendant Laura Yousif is the sister of the decedent, Malec Yousif, and is the administratrix of his estate. Her parents, Wahid S. Yousif and Amni D. Yousif (the "Yousifs") are the named insureds on Progressive policy Nos. 18974128-6 and 18974140-6 (the"Policies"). Collectively, the Policies insure seven vehicles; however, the 2006 Suzuki motorcycle ridden by Malec Yousif at the time of the fatal accident was not a covered vehicle under either Policy.[2] The Policies contain identical provisions for UM/UIM coverage; both also contain identical express exclusions for UM/UIM coverage.

The only issue raised by Progressive's motion is whether the undisputed facts establish that one of the exclusions precludes coverage in this case. The exclusion on which Progressive relies provides that UM/UIM coverage is excluded "for bodily injury sustained by any person while using or occupying...a motor vehicle that is owned by or available for the regular use of you or a relative." Progressive Policies, Part III- Uninsured Motorist Coverage, <u>Exclusions</u>, Progressive Exhibit 5, p. 11. Progressive argues the undisputed facts establish that, even if Malec Yousif did not own the motorcycle at the time of the accident, he was operating a motorcycle which was not insured under the Policies, but was "available for his regular use;" thus, it argues the exclusion precludes coverage.[3] In her response and summary judgment motion, Defendant argues the undisputed

---

[2]The parties agree that, at the time of the accident, the motorcycle was not covered by any insurance policy.

[3]In its Complaint, Progressive also questions whether Malec Yousif was the owner of the motorcycle, as ownership would also trigger application of the exclusion. In its summary judgment motion, Progressive expressly does not concede that the motorcycle was owned by another individual; however, it states that ownership is a disputed legal and factual issue which cannot properly be resolved in a summary judgment motion. Progressive brief, pp. 1-2. For purposes of the motion, however, Progressive states it will "presume (but not admit) that the motorcycle was owned by another individual at the relevant time. *Id.,* p. 2. In both her response to Progressive's motion and her cross-motion, Defendant argues at length that Malec Yousif did not own the motorcycle, and many of her exhibits relate only to ownership. However, Defendant does not ask the Court to grant judgment on the issue of ownership, and the "only issue before the Court is whether there is any factual dispute that a motorcycle being ridden by Decedent, Malec Yousif...was available for his regular use." Defendant's summary judgment motion and brief at p. 1. Progressive also initially took the position that Malec Yousif was not covered as a relative of the insureds under the Policies because he did not reside
(continued...)

material facts establish the motorcycle was not available for Malec Yousif's regular use. As a result, she contends she is entitled to judgment on this issue, and coverage is provided under the Policies. Because the parties agree the only issue to be decided by the Court is whether the "available for regular use" exclusion applies, the Court will confine its ruling accordingly and need not address other coverage issues raised in the Complaint.[4]

II. Summary judgment standards:

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To dispute a material fact, the non-moving party must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for her. *Id.* "[T]he requirement that a dispute be 'genuine' means simply that there must be more than 'some metaphysical doubt as to the material facts.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The facts and reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party, "to the extent supportable by the

---

[3](...continued)
with them; however, its brief states it subsequently determined he resided with the insureds at the relevant time, and it does not seek judgment on that basis. Progressive brief, at p. 2, n. 1.

[4]Progressive's motion also seeks judgment on the contention that the Policies provide no Medical Payments Coverage for Malec Yousif because it is undisputed that the motorcycle was not an "auto," "additional auto," or "replacement auto" as those terms are defined in the Policies. Progressive Motion, Proposition I. As Progressive points out in its reply, Defendant did not respond to this argument, and she admits all material facts pertinent to the argument. As a result, the Court need not address the argument in this Order, as Defendant does not contest Progressive's right to judgment on this issue. Accordingly, Progressive's motion for summary judgment is granted on its contention that, under the circumstances established by the undisputed facts, no Medical Payments Coverage is provided for Malec Yousif under the Policies.

3

record." *Id.* at 394 n. 5; *MacKenzie v. City & County of Denver*, 414 F. 3d 1266, 1273 (10th Cir. 2005). If a party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott,* 550 U.S. at 380.

Because interpretation of an unambiguous contract or insurance policy is a question of law for the Court, that interpretation is proper for summary judgment adjudication.[5] *May v. Mid-Century Ins. Co.*, 151 P. 3d 132, 140 (Okla. 2006). The same applies to insurance policy exclusionary provisions, including an "available for regular use" exclusion; although determining whether a vehicle is available for regular use requires a "fact intensive" analysis, summary adjudication is appropriate where, as in this case, the material facts are not disputed. 8A Lee R. Russ, *et al.*, *Couch on Insurance* § 118:40, at 118-67; § 121:68, at 121-93 (3d ed. 2005). Accordingly, the issue is proper for summary adjudication in this case.

III. The record before the Court:

The record submitted by the parties reflects that the facts relevant to the exclusion issue raised by the parties are substantially undisputed. In summary, the record reflects the parties do not dispute that Malec Yousif died as a result of a February 2, 2009 collision involving the motorcycle he was riding and an automobile. It is also not disputed that the Policies were effective on that date, that the motorcycle was not a covered vehicle under the Policies, and that Malec Yousif resided with his parents, the insureds, at the time of the accident. Furthermore, the parties agree that the Policies contained exclusions for UM/UIM coverage. They also agree that one of these exclusions applies when a person sustains bodily injury while using any uninsured vehicle owned by, or available for

---

[5]As discussed in Part IV, *infra*, the parties do not contend that the Policies or exclusions therein are ambiguous, and the Court concludes no ambiguity exists.

the regular use of, the insureds or a relative of the insureds.

It is not disputed that Malec Yousif purchased the motorcycle in October or November of 2008[6]; however, title was never transferred to him. As of August, 2009, Lucas Townsend was the registered owner. *See* motorcycle title history, Progressive Ex. 6. The parties submit no documents reflecting transfer of title to Malec Yousif or to anyone else.

The parties agree that, sometime in October or November of 2008, Josh Ozeretny ("Ozeretny") began residing at the Yousifs' home at 8320 N. W. 112th Street in Oklahoma City; he also began working for the Yousif family. According to the undisputed testimony of Ozeretny, Malec Yousif had possession of the motorcycle when Ozeretny moved in, and he kept it in the garage of the residence. It is not disputed that Malec Yousif also owned at least one other vehicle, a truck. According to Ozeretny, Malec Yousif's parents did not initially know he had purchased a motorcycle; when they learned he had done so, they were extremely angry and would not allow him to keep the motorcycle in the residence garage; he then stored it in the yard. At the time, Ozeretny did not have a vehicle; Malec Yousif allowed Ozeretny to drive Malec's truck when he needed a vehicle. Ozeretny dep., Progressive Ex. 7, p. 36, lines 3-5.

Ozeretny testified that, to avoid continuing arguments with his parents, Malec Yousif decided to sell the motorcycle.[7] *Id.,* p. 26, lines 24-25; p. 27, lines 1-5. Ozeretny also testified he

---

[6]The exact date on which he purchased the motorcycle is not clear from the record; however, he had possession of it at least by November of 2008, when Josh Ozeretny moved into the Yousifs' home. Josh Ozeretny deposition, Progressive Ex. 7, p. 34, lines 14-25; p. 24, line 1; p. 25, lines 15-22.

[7]During a July 22, 2009 recorded telephone interview with Progressive, Ozeretny said Malec agreed to sell the motorcycle to him because he knew Ozeretny wanted a motorcycle, he and Malec were good friends, and Malec could afford to buy another one. Interview transcript, Progressive Reply Ex. 3, p. 8. That Ozeretny offered two different reasons for the sale is not significant because the reason for the sale does not impact whether the motorcycle was available for Malec's regular use after the sale. Similarly, the Court need not address whether Malec tried to sell the motorcycle by occasionally parking it at his uncle's restaurant in January, 2009; that evidence does not impact the
(continued...)

5

purchased the motorcycle from Malec Yousif on January 12, 2009, and paid a down payment of $500.00, with the balance of the $7,500.00 total price to be paid in $400 monthly payments. *See* January 12, 2009 document entitled "Bill of Sale," Progressive Ex. 8. The bill of sale is executed by Ozeretny; his signature was notarized by Heather Baltic, who is Malec Yousif's cousin. Heather Baltic dep., Defendant's Ex. 3, p. 26, lines 8-10.

After he executed the January 12, 2009 bill of sale, Ozeretny considered himself the owner of the motorcycle; however, he continued to keep it at the Yousifs' residence, where he lived. There was only one key to the motorcycle, and Ozeretny put it on his key chain. According to Ozeretny, he rode the motorcycle five or six times between the January 12 purchase and the February 2 accident. Ozeretny dep., Progressive Ex. 7, p. 54, lines 11-14. During this same 21- day period, Malec Yousif rode it twice; the first time was at Ozeretny's request because Ozeretny needed to borrow Malec Yousif's truck, and the second time was on February 2, 2009. *Id.*, p. 45, line 4 through p. 46, line 25. Ozeretny also testified that, during the time period prior to January 12 when Malec owned the motorcycle, Malec did not ride it often. Ozeretny dep., p. 31, lines 2-7.

Although Ozeretny considered himself the owner of the motorcycle and had the only key, he testified that because of their friendship if Malec Yousif asked to use the motorcycle, Ozeretny would have let him do so. *Id.*, p. 55, lines 20-23. He testified that he and Malec were "really close," and he would have "done anything I could for the guy." Ozeretny dep., p. 56, lines 10-15. With respect to the motorcycle, Ozeretny testified, "if he asked me to ride it, I would let him." *Id.*, p. 33, lines 23-24. Because Malec "had his own vehicles, he didn't ask to ride it all the time." Ozeretny dep., p. 35, line 25; p. 36, line 1. According to Ozeretny, "if I needed to borrow his truck,

---

[7](...continued)
pending motions.

he would let me. If he needed to borrow anything of mine, I would have let him," adding "[t]hat's what close friends do." *Id.*, p. 36, lines 3-6; line 8. He also testified that the only time he would not have allowed Malec to ride the motorcycle was if Ozeretny needed it for his own use.[8] *Id.*, p. 57, lines 2-6.

It is not disputed that, on February 2, 2009, Malec Yousif asked to use the motorcycle to go to a restaurant so he could collect money owed to him by a friend; Ozeretny agreed and gave him the key. The fatal accident occurred during this trip. Following the accident, Defendant, in her capacity as administratrix of Malec Yousif's estate, submitted a claim for Uninsured Motorist Coverage pursuant to the Policies.[9] Progressive believed its investigation of the claim raised issues regarding the availability of coverage, and it filed this action to obtain a declaratory judgment on those issues.

IV. Application:

A. Interpretation of the "available for regular use" exclusion in the Policies:

The interpretation of an insurance contract and whether it is ambiguous is determined by the Court as a matter of law. *Haworth v. Jantzen*, 172 P. 3d 193, 196 (Okla. 2006); *Alea London Ltd. v. Canal Club, Inc.*, 231 P.3d 157,160 (Okla. Ct. App.2009). Under Oklahoma law, an insurance policy is a contract subject to general interpretation principles of ordinary contract law. *IDG, Inc.*

---

[8] Defendant's response brief and her motion list as material facts several statements based on Ozeretny's responses to Defendant's deposition questions phrased in conclusory terms derived from court decisions identifying limitations on the "available for regular use" exclusion. She cites these statements by counsel, to which Ozeretny offered "yes" or "no" responses, as undisputed material facts. As explained in Part IV(B), *infra,* the Court has concluded that those questions, even if properly considered as appropriate summary judgment evidence, do not significantly impact its decision on the summary judgment motions.

[9] According to the Complaint, the driver of the other vehicle involved in the accident was insured by American Commerce Insurance, and American Commerce Insurance offered to tender to the Yousifs the $25,000 liability limit under that policy.

7

*v. Continental Casualty Company*, 275 F. 3d 916 (10th Cir. 2001).[10] Thus, an unambiguous insurance policy is interpreted according to the plain meaning of the language in the policy. *VBF, Inc. v. Chubb Group of Insurance Companies*, 263 F. 3d 1226 (10th Cir. 2001).

In a reply brief in support of her summary judgment motion, Defendant argues for the first time that, under the "reasonable expectations doctrine," the Court must construe the Policies and the exclusion at issue in a manner that will comport with the reasonable expectation of the insureds that coverage will be available in these circumstances. Because that issue had not been raised in any previous briefs, the Court granted Progressive leave to respond to this new argument in a sur-reply brief.

Contrary to Defendant's apparent contention, the reasonable expectations doctrine is applied only in limited circumstances; specifically, it applies only if the Court finds 1) the insurance policy language is ambiguous or 2) a policy exclusion is "masked by technical or obscure language," or is "hidden in a policy's provisions." *American Economy Ins. Co. v. Bogdahn,* 89 P. 3d 1051, 1054 (Okla. 2004) (citing *Max True Plastering Co. v. USF&G,* 912 P.2d 861, 870 (Okla. 1996)). Without such limitations, "insureds could develop a 'reasonable expectation' that every loss will be covered by their policy and courts would find themselves engaging in wholesale rewriting of insurance policies." *Max True Plastering*, 912 P.2d at 868. Accordingly, if there is no ambiguity in a policy and exclusions are neither hidden nor masked by technical or obscure language, the reasonable expectations doctrine is not applied. *American Economy*, 89 P. 3d at 1054; *see also VBF*, 263 F. 3d at 1234 (applying Oklahoma law).

In this case, Defendant does not point to specific Policy provisions which she contends are

---

[10] The ordinary rules of interpretation are set forth in a statutory scheme found at Okla. Stat. tit. 15 § 151 *et seq.*

ambiguous, nor does she argue that the exclusion at issue is hidden or masked by technical or obscure language. She argues instead that interpreting the exclusion to preclude coverage in these circumstances would be contrary to the insureds' expectations. The Court finds Defendant's argument unpersuasive.

"An insurance contract is ambiguous only if it is susceptible to two constructions on its face from the standpoint of a reasonably prudent layperson, not from that of a lawyer." *Haworth*, 172 P. 3d at 196. "However, this Court will not indulge in forced or constrained interpretations to create and then construe ambiguities in insurance contracts." *Id.; Max True Plastering Co.,* 912 P. 2d at, 869. "The mere fact the parties disagree or press for a different construction does not make an agreement ambiguous." *Pitco Prod. Co. v. Chaparral Energy, Inc*., 63 P.3d 541, 545 (Okla. 2003). In interpreting an insurance contract, the Court "will not make a better contract by altering a term for a party's benefit." *Max True Plastering*, 912 P. 2d at 869. If the insurance policy is not ambiguous, the Court applies its language according to "its plain, ordinary, and popular sense." *Haworth*, 172 P. 3d at 196.

There is no ambiguity in the provision at issue here. With regard to the "regular use" or "available for regular use" exclusion, courts considering the issue have typically rejected the contention that the phrases are ambiguous. *See, e.g., Ryan v. State Farm Mutual Auto. Ins. Co.*, 921 N. E. 2d 458, 461 (Ill. Ct. App. 2009); *Brink v. Erie Insurance Group,* 940 A. 2d 528, 533 ( Pa. Super. Ct. 2008); *Seymour v. Estate of Karp*, 996 So. 2d 1, 7 (La. Ct. App. 2008); *Gillard v. Taylor*, 2009 WL 723499, at *4-5 (Tenn. Ct. App. March 18, 2009 (unpublished opinion) (citing *O'Brien v. Halifax Ins. Co. of Mass.,*41 So. 2d 307, 308 (Fla. Ct. App. 1962)); *Snow v. West American Ins. Co.*, 161 S. W. 3d 338, 341 (Ky. Ct. App. 2004); *Adzick v. UNUM Life Ins. Co. of America*, 351 F.

3d 883, 889 (8th Cir. 2003) (applying Minnesota law); *Cruz v. Farmers Ins. Exchange*, 12 P. 3d 307, 311 (Colo. Ct. App. 2000); *Kenney v. Employers' Liability Assur. Corp.*, 214 N. E. 2d 219, 221 (Ohio 1966).

Although some courts have found the phrase "regular use" ambiguous, those decisions represent the minority view; "[t]he majority of courts which have considered regular use exclusions subsequent to *Ricci* [11] have held the phrase 'regular use' to be unambiguous as a matter of law, notwithstanding the absence of a specific definition in the policy." *American Family Ins. Group v. Hemenway,* 575 N. W. 2d 143, 149 (Neb. 1998). "'The overwhelming weight of authority supports the view that 'regular use'...is not ambiguous.'" *Nationwide Mut. Ins. Co. v. Shoemaker*, 965 F. Supp. 700, 703 n. 3 (E. D. Pa. 1997) (quoting *Foster v. Johnstone*, 685 P. 2d 802, 805 (Id. 1984)).

Accordingly, the Court concludes that the exclusionary language in the Policies applicable to vehicles "available for the regular use" of an insured or family member is not ambiguous and is to be interpreted according to its ordinary meaning.

Nor is there any basis for applying the reasonable expectations doctrine on the alternative grounds that the exclusion is hidden or masked by technical or obscure language. The exclusion is not hidden in the Policies, but is prominently displayed and preceded by a title in bold-face type stating "<u>EXCLUSIONS</u> - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III." *See* Policies, Part III-Uninsured Motorist Coverage, Progressive Ex. 5A,pp.10-11. The language of the exclusion is neither technical nor obscure, but is presented clearly.

Defendant asserts no persuasive argument to warrant consideration of the reasonable

---

[11] *Ricci v. U. S. Fidelity & Guaranty Co.*, 290 A. 2d 408, 413 (R.I. 1972) (finding "furnished for the regular use of" an ambiguous phrase).

expectations doctrine. Accordingly, the Court will construe the Policies and the exclusions therein according to their plain and ordinary meaning. *Haworth*, 172 P. 3d at 196.

B. Application of the "available for regular use" exclusion to the undisputed facts:

The parties agree that the exclusion in the Policies is valid under Oklahoma's statute mandating uninsured motorist coverage. In fact, the statute expressly states that uninsured motorist coverage is not provided for "any insured while occupying a motor vehicle owned by or furnished or <u>available for the regular use of the named insured</u>, a resident spouse of the named insured, <u>or a resident relative of the named insured</u>, if such motor vehicle is not insured by a motor vehicle insurance policy." Okla. Stat. § tit. 36, § 3636(E) (emphasis added); *Conner v. American Commerce Ins.*, 216 P. 3d 850, 851 (Okla. Civ. App. 2009). The parties do not dispute that the language of the exclusion in the Policies is basically identical to that in § 3636(E). Instead, their dispute is whether the exclusion applies to the facts of this case. More specifically, the question is whether the evidence submitted by the parties establishes that the motorcycle was "available for the regular use" of Malec Yousif, even if Ozeretny was the owner at the relevant time. Both parties contend that the facts necessary to the determination are undisputed. If the motorcycle was available for Malec Yousif's regular use, then the exclusion applies and coverage is precluded; if it was not available for his regular use, then the exclusion is inapplicable, and coverage is provided, assuming Ozeretny was the owner. Progressive acknowledges that, as the insurer, it has the burden of proving the applicability of a policy exclusion. *See State Farm Mut. Automobile Ins. Co. v. Vokoun*, 2008 WL 4377437, at *2 (E. D. Okla., Sept. 25, 2008) (unpublished decision) (citing *Pitman v. Blue*

*Cross & Blue Shield of Oklahoma*, 217 F. 3d 1291, 1298 (10th Cir. 2000)).[12]

The parties agree that no Oklahoma court has defined "available for regular use," in the context of an insurance policy exclusion. Courts interpreting the "regular use" exclusion have concluded "[t]here is no precise definition of 'regular use,' and generally each case must be determined on the basis of its own facts." *American Family Mutual Ins. Co. v. Jones*, 2008 WL 4457696, at *5 (D. N.D. Sept. 30, 2008) (unpublished opinion) (citing *American Hardware Mut. Ins. Col. v. Nat'l Farmers Union Property & Casualty Co.,* 422 N. W. 2d 402, 404 (N.D. 1988)); *see also* 8A Lee R. Russ, *et al.*, *Couch on Insurance* § 121:68, at 121-92 (3d ed. 2005).

Courts considering the question have typically applied a dictionary definition to determine the meaning of regular use in the context of an insurance policy exclusion. Thus, "regular use" has been defined as a "use that is consistent with a recurring pattern or uniform course of conduct or dealing." *Valentine v. Farmers Ins. Exchange*, 141 P. 3d 618, 622 ( Utah Ct. App. 2006); *North Carolina Farm Bureau Mut. Ins. Co.*, 390 S. E. 2d 138, 140-41 (N.C. 1990). The phrase has been similarly defined as denoting "customary use as opposed to occasional use or special use," *Peace v. Allstate Ins. Co.*, 671 P. 2d 931, 935 (Ariz. Ct. App. 1983), or "casual" or "infrequent" use of a vehicle. *McGuire v. Draughon*, 612 S. E. 2d 428, 431 (N. C. Ct. App. 2005). One court observed that availability for regular use depends on "whether there is a consistent pattern of use or availability." *Safety Ins. Co. v. Day*, 836 N. E. 2d 339, 345 (Mass. App. Ct. 2005).

However, regular use does not require a use "that is unfettered or without limitation." *Valentine*, 141 P. 3d at 622. "Regular use need not be 'continuous' or even defined in terms of

---

[12]Defendant bears the burden of proving that the loss at issue is covered by the Policies. *Pitman*, 217 F. 3d at 1298. For purposes of its summary judgment motion, Progressive states that it will presume this burden can be satisfied. Progressive motion and brief, pp. 14-15.

continuity, and need not be uninterrupted or even for all purposes without limitation." 8A Lee R. Russ, *et al.*, *Couch on Insurance* § 121:71, at 121-97 (3d ed. 2005). Thus, a regular use may exist "even though some restrictions or limitations are imposed on the use." *Id.* at 121-96.

Some courts have identified factors to be considered in determining "regular use." In *American States Ins. Co. v. Tanner*, 563 S. E. 2d 825 (W. Va. 2002), the court considered 1) the general availability of the vehicle; 2) the frequency of the use, i.e., habitual, frequent or principal use as opposed to temporary, casual, or occasional use; 3) the restrictions, if any, placed upon the vehicle's use; and 4) the nature of the use, i.e., whether the vehicle was used for a single occasion or limited purpose.[13] *Id.* at 831. However, the court added that this is not an exclusive list, as other factors may apply according to the circumstances of the case. *Id.* Another court identified factors including use of a borrowed vehicle to commute to work, lack of exclusive use for a significant period, and lack of unrestricted use; however, those factors were not, by themselves, determinative. *Safety Ins. Co.*, 836 N. E. 2d at 345.[14]

Considering the plain meaning of the term "regular use" and the court decisions interpreting its application in the context of an insurance policy exclusion, the Court finds the use should be consistent with a recurring pattern or uniform course of conduct or dealing, as opposed to casual or occasional. However, the use need not be continuous, unfettered, or without limitation, and it may be subject to some restrictions.

In this case, however, the exclusion is not simply for vehicles regularly used; instead it

---

[13]Applying those factors to an individual's use of a rental vehicle while her personal vehicle was being repaired, the court in *American States* found the rental vehicle was not furnished or available for her regular use.

[14]Applying those factors to an individual's use of a vehicle which she drove two to three times per month and occupied as a passenger about twice a month, the court in *Safety Ins. Co.* found the regular use exclusion precluded coverage.

13

excludes vehicles "available" for regular use. Decisions applying similar exclusions reflect a distinction between exclusions based on "regular use" and those based on "available for regular use." Where the policy excludes coverage for vehicles "available" for regular use, the fact that an individual did not regularly use the vehicle is not dispositive; a critical issue is whether he had the *right* to do so. *See Wyatt v. Cimarron Ins. Co.*, 235 F. 2d 243, 246 (10th Cir. 1956). In *Wyatt*, the Circuit interpreted a provision excluding insurance coverage if a vehicle was "owned by" or "furnished for the regular use of the named insured." There was evidence the individual at issue rarely used the vehicle; however, the Circuit held "the fact that he had not exercised his unrestricted right to use it is not important," as the critical issue was whether he possessed that right. *Wyatt*, 235 F. 2d at 246. The *Wyatt* case, however, turned on the fact that the individual involved had a *legal right* to use the vehicle, as it was owned by a partnership in which he was a partner.[15] No evidence in the present record establishes that Malec Yousif retained the *right* to use the motorcycle.

Other courts have also recognized that frequency of use is not the dispositive factor. "[T]he test for regular use does not consider how often a vehicle, or fleet of vehicles, was actually used, but rather considers whether this vehicle or group of vehicles was regularly *available* for use." *Prudential Property & Casualty Insurance Co. v. Armstrong*, 2004 WL 603416, at *2 (E. D. Pa. Mar. 24, 2004) (emphasis in original) (unpublished opinion) (citing *Automobile Ins. Co. of Hartford v. Curran*, 994 F. Supp. 324, 330 (E. D. Pa. 1998)). Thus, although frequency of use may be a factor in determining the degree to which a vehicle was available, it is not by itself dispositive.

In this case, the time period in which availability for regular use must be determined is the 21-day period from the January 12, 2009 bill of sale until the February 2, 2009 fatal accident. It

---

[15]Defendant also correctly notes that *Wyatt* did not involve uninsured motorist coverage and is factually distinguishable from this case.

is undisputed that during the 21-day period the motorcycle was ridden no more than eight times, as Ozeretny testified he used the motorcycle five or six times, and MalecYousif used it twice. Ozeretny dep., p. 54, lines 11-14; p. 45, lines 4-7. As Progressive points out, Malec Yousif's use equates to approximately 25% of the times the motorcycle was ridden by anyone after January 12. Furthermore, the evidence shows that, even when he owned the motorcycle, Malec Yousif did not frequently ride it. *Id.*, p. 31, lines 2-7. Ozeretny also testified that Malec Yousif seldom asked to ride the motorcycle after January 12 because he "had his own vehicles." Ozeretny dep., p. 35, line 25, p. 36, line 1. However, the bare fact that Malec Yousif used the motorcycle 25% of the time during the 21 days in question paints a misleading picture. Regarding the two occasions when he used the motorcycle, one occasion was precipitated by Ozeretny because he asked to use Malec Yousif's truck for a specific purpose, and in exchange allowed Malec to use the motorcycle. Ozeretny dep., Defendant's Ex. 2, p.45, lines 8-25; p. 46, lines 1-22. This can hardly be considered as evidence that the motorcycle was available for the regular use of Malec Yousif. Thus, with respect to the frequency of Malec Yousif's use of the motorcycle, the undisputed facts militate against a determination that the motorcycle was available for his regular use. However, the Court must consider additional factors concerning availability of the motorcycle.

Courts considering the "available for regular use" exclusion have also examined a variety of other factors, including whether the vehicle was physically accessible, whether the keys were accessible, and whether the owner's permission was required prior to use. If advance permission was required, the courts consider the scope of that permission, including any restrictions on use. *See* 8A Lee R. Russ, *et al., Couch on Insurance* §§ 118:32- 118:36 (3d ed. 2005); *American Family Mutual Ins. Co. v. Jones*, 2008 WL 4457696, at * 7 (S.D. N.D. Sept. 30, 2008) (unpublished

opinion); *Chon v. Allstate Ins. Co.,* 522 So. 2d 690, 691-92 (La. Ct. App. 1988).

The record in this case reflects that the motorcycle was physically accessible to Malec Yousif; Ozeretny testified that after January 12, 2009, he continued to keep the motorcycle at the Yousifs' residence where he and Malec Yousif lived. Ozeretny dep., Plaintiff's Ex. 7, p. 29, lines 20-23; p. 30, lines 4-9. However, the record also reflects that, after January 12, Ozeretny had possession of the only key to the motorcycle. As Defendant argues, Ozeretny's possession of the only key is evidence that Malec Yousif could not use the motorcycle without obtaining Ozeretny's permission. In fact, on the single occasion when Malec Yousif wanted to use the motorcycle for his own purposes, he sought – and obtained – Ozeretny's permission. *Id.*, p. 33, lines 1-9.

Progressive emphasizes the deposition testimony of Ozeretny about his close friendship with Malec Yousif, and that based on this friendship he would do anything he could for Malec, including allowing him to use the motorcycle. For example, Ozeretny testified, "if he asked me to ride it, I would let him," and "if I needed to borrow his truck, he would let me. If he needed to borrow anything of mine, I would have let him," adding "[t]hat's what close friends do." Ozeretny dep., p. 33, lines 23-24, p. 36, lines 3-6, 8. However, he also testified that Malec Yousif rode the motorcycle only twice after January 12; on both occasions, Ozeretny gave him permission, *Id.,* p. 55, lines 23-25; p. 56, line 1, and as previously mentioned, on one such occasion the use was precipitated by Ozeretny's need to use Malec Yousif's truck. Ozeretny dep., Defendant's Ex. 2, p.45, lines 8-25; p. 46, lines1-22. Ozeretny further testified because Malec Yousif "had his own vehicles, he didn't ask to ride it all the time." Ozeretny dep., p. 35, line 25, p. 36, line 1.[16]

---

[16]Following the foregoing testimony, however, Defendant's counsel asked Ozeretny a series of questions phrased in language from court decisions in which certain use limitations were found sufficient to preclude a finding of regular use; counsel's questions sought affirmative or negative responses by Ozeretny. For example, counsel asked "[d]o
(continued...)

Testimony regarding what Ozeretny *might* have done in the future – based upon his close friendship with now-deceased Malec Yousif – regarding use of the motorcycle is less informative to the Court than what was *actually* done when Malec Yousif was alive. During the 21-day period in question, Ozeretny kept the only key to the motorcycle; on the one occasion when Malec Yousif used the motorcycle for his own purposes, he asked for Ozeretny's permission, and used it for a specific, limited purpose; there is no evidence in the summary judgment record that Ozeretny and Malec Yousif had an agreement regarding use of the motorcycle; and the present summary judgment record does not establish that Malec Yousif had the right to use the motorcycle whenever he desired. No consistent pattern of use is established from the evidence and, to the contrary, the evidence supports a finding of occasional, casual use.

The undisputed facts in this case do not establish that the motorcycle was available for the regular use of Malec Yousif, and, therefore, Plaintiff has not met its burden to establish the applicability of the policy exclusion involved here.

V. Conclusion:

For the reasons set forth herein, Progressive's Motion for Summary Judgment [Doc. No. 17]

---

[16](...continued)
you agree that his use was infrequent and casual and by special permission on particular occasions?" Ozeretny dep., p. 48, lines 12-14. After counsel repeated the question at Ozeretny's request, Ozeretny responded, "Like he would only ask me, yes." *Id.*, at lines 23-24. To counsel's question, "[a]nd the motorcycle was used by him not habitually, frequent [sic], or principal [sic]?" Ozeretny answered, "[c]orrect." Ozeretny dep., p. 49, lines 4-7. Counsel also asked, "[t]ypically, [the use] was for a specified period of time, was it not?" and "[i]t was restricted to a reasonable geographic location, was it not?" Ozeretny replied affirmatively to these questions. Ozeretny dep., p. 50, lines 3-17. Progressive's counsel raised objections to the form of each of these questions. Deposition or interrogatory questions phrased in broad conclusory legal terms are not helpful to the Court in deciding a summary judgment motion. *Houck v. City of Prairie Village,* 1998 WL 792154, at *3 (10th Cir. Nov. 13, 1998) (unpublished opinion); *see also Reed v. United States,* 438 F.2d 1154, 1156 (10th Cir. 1971) (interrogatories should not contain "general legal conclusions attired in the grammatical garb of inquisitive sentences."). The testimony elicited by these questions was considered, but was of little significance in the Court's decision.

is GRANTED IN PART AND DENIED IN PART. Progressive's Motion is GRANTED only on the contention that the Policies do not provide Medical Payments Coverage for Malec Yousif; Progressive's motion based on the "available for regular use" exclusion is DENIED. For the reasons set forth herein, Defendant's Motion for Summary Judgment [Doc. No. 21] on the "available for regular use" exclusion is GRANTED, as the exclusion does not apply under these circumstances. No later than fourteen (14) business days from the date of the filing of this Order, the parties shall advise the Court of the issues, if any, remaining for trial in this declaratory judgment action.

IT IS SO ORDERED this 8th day of October, 2010.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE